154 F.3d 56
 RICO Bus.Disp.Guide 9551
 In re: MERRILL LYNCH LIMITED PARTNERSHIPS LITIGATION.
Louis LANZA; Stephen Guido and Victoria Scala, on behalf of
themselves and all others similarly situated,
Plaintiffs-Appellants,
v.
MERRILL LYNCH & COMPANY, INC.; Merrill Lynch Pierce Fenner
& Smith Incorporated and John Does 1 through 20,
Defendants-Appellees.
 Docket No. 97-9205.
 United States Court of Appeals,
Second Circuit.
 Argued May 4, 1998.
Decided Aug. 31, 1998.
 
 Arthur R. Miller, Harvard Law School, Cambridge, MA (Melvyn I. Weiss, Michael C. Spencer, Salvatore J. Graziano, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, Kevin P. Roddy, Los Angeles, CA, Nicholas E. Chimicles, M. Katherine Meermans, Chimicles Jacobsen & Tikellis, Haverford, PA, of counsel), for Plaintiffs-Appellants.
 Robert F. Serio, New York, NY (Wesley G. Howell, Jr., Peter J. Beshar, Gibson, Dunn & Crutcher LLP, New York, NY, Edward J. Yodowitz, Ira Brad Matetsky, Skadden, Arps, Slate, Meagher & Flom, New York, NY, of counsel), for Defendants-Appellees.
 Before: FEINBERG, PARKER and PHILLIPS*, Circuit Judges.
 PER CURIAM:
 
 I. BACKGROUND
 A. Facts
 
 1
 Investors in a series of Merrill Lynch real estate limited partnerships ("investors") appeal from a judgment of the United States District Court for the Southern District of New York (Michael B. Mukasey, Judge ), entered August 26, 1997, dismissing pursuant to Rule 12(b)(6) their civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-68, claims on statute of limitations grounds, and declining to exercise supplemental jurisdiction over their state law claims.
 
 
 2
 Investors claim that defendants Merrill Lynch & Co, and its wholly owned subsidiary, Merrill Lynch, Pierce Fenner & Smith (collectively "Merrill Lynch") engaged in a fraud designed to promote the sale of units in nine real estate limited partnerships between 1979 and 1987. The partnership units represented capital contributions by investors in limited partnerships which were created and controlled by Merrill Lynch. Merrill Lynch invested the capital contributions in real estate selected according to Merrill Lynch's particularized criteria. In late 1995, groups of investors filed four claims against Merrill Lynch in federal courts relating to the limited partnerships. By order of Judge Mukasey dated February 25, 1996 the cases were consolidated into this action. The investors were then given a month to file an amended complaint. Further, the order provided that the investors would have the opportunity to file a second amended complaint after they had a reasonable opportunity to take document discovery.
 
 
 3
 On March 29, 1996, investors filed their first class action complaint. Specifically, the investors alleged violations of RICO, 18 U.S.C. §§ 1962(a), (c) and (d). As predicate acts for their RICO claims, investors alleged mail, wire and securities fraud. After a period of discovery (during which investors allege Merrill Lynch was not forthcoming with all documents), Merrill Lynch moved to dismiss the complaint. Investors were given an opportunity to either respond to the motion or to file a second amended complaint ("SAC"). They chose the latter course.
 
 
 4
 The SAC, based again on RICO, asserts that Merrill Lynch made fraudulent representations and omissions to induce investors to invest in the partnerships. The specific allegations of the SAC are described in detail in the district court's decision. See In Re Merrill Lynch Ltd. Partnerships Litig., 7 F.Supp.2d 256, 259-60 (S.D.N.Y.1997). Merrill Lynch moved to dismiss the SAC on February 14, 1997, asserting both that the claims were barred by the applicable four-year statute of limitations, and that the claims were subject to dismissal under the "bespeaks caution" doctrine.
 
 
 5
 In support of their motion to dismiss, Merrill Lynch attached the prospectuses relating to the partnerships and the annual reports distributed to the investors. It is undisputed that these documents could be considered by the district court even on a Rule 12(b)(6) motion because they are documents filed with the Securities and Exchange Commission and are integral to the complaint. See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 808-09 (2d Cir.1996); Kramer v. Time Warner Inc., 937 F.2d 767, 773-74 (2d Cir.1991). The investors moved to convert the 12(b)(6) motion to a summary judgment motion and to obtain further discovery.
 
 B. The District Court's Decision
 
 6
 The district court granted the motion to dismiss, holding that the RICO claims were barred by the statute of limitations. In Re Merrill Lynch, at 274. The court found that the investors sustained their RICO injury at the time they purchased their limited partnership interests (1987 at the latest). Id. at 264. The court noted that the complaint alleged that the limited partnerships were fraudulent because even at the outset it was clear that they could not achieve their promised returns. Id. at 263. Further, the court found that statements in the prospectuses and annual reports put investors on inquiry notice of the fraudulent scheme before November 1991. Id. at 274. The district court also found that the investors had not properly pleaded their exercise of due diligence in pursuing the discovery of the claim and thus could not be heard to claim fraudulent concealment. Id. at 275. The investors requested an opportunity to amend the SAC to cure that omission. The court denied the request.
 
 
 7
 Investors also argued that Merrill Lynch's pattern of misrepresentations in the annual reports constituted "separate and independent" injuries which occurred after the purchase of the partnership units and within the limitations period. The district court found that the alleged misrepresentations were, at most, efforts to conceal the alleged fraud and did not result in new and independent losses to the investors. Id. at 265. The court then denied the investors' motion to convert the 12(b)(6) motion into a summary judgment motion because Merrill Lynch was entitled to dismissal on the pleadings. The court held that no further documents could save the investors' claims from dismissal. Id. at 276. Finally, the district court decided not to retain supplemental jurisdiction over the state law claims. Id. at 276.
 
 II. DISCUSSION
 A. Standard of Review
 
 8
 We review the district court's Rule 12(b)(6) dismissal de novo, taking as true all allegations in the complaint, and drawing all reasonable inferences therefrom in the investors' favor. Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2, 4-5 (2d Cir.1996)(Parker, J.). We review for abuse of discretion the denial of leave to amend the SAC, the denial of the investors' motion to convert the 12(b)(6) motion to a summary judgment motion and to reopen discovery, and the refusal to retain jurisdiction over investors' state law claims.
 
 B. The Statute of Limitations
 
 9
 Civil RICO claims are subject to a four-year statute of limitations. Agency Holding Corp. v. Malley-Duff & Assocs., 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). The limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury. Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1102 (2d Cir.1988). The initial complaint filed against Merrill Lynch in this matter was filed November 29, 1995. Thus, if the investors were on inquiry notice of the alleged injury before November 29, 1991, their RICO claims are time-barred unless an exception to the limitations period applies. For example, this Court recognizes a "separate accrual" rule under which a new claim accrues and the four-year limitation period begins anew each time a plaintiff discovers or should have discovered a new and independent injury. Id. at 1103.
 
 1. The Injury
 
 10
 The first step in the statute of limitations analysis is to determine when the investors sustained the alleged injury for which they seek redress. Id. at 1102. We then determine when they discovered or should have discovered the injury and begin the four-year statute of limitations period at that point. Id.
 
 
 11
 Investors rely on Bankers Trust, First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 767 (2d Cir.1994), and Cruden v. Bank of New York, 957 F.2d 961, 977-78 (2d Cir.1992) for the proposition that the RICO injury does not become ripe until the "amount of damages becomes clear and definite." First Nationwide, 27 F.3d at 768 (citing Bankers Trust ). Their damages were not definite, they argue, until at least 1994 when Merrill Lynch made clear in its annual report that the partnerships had suffered permanent impairments in value, and that the previously promised returns would not be met.
 
 
 12
 We find Bankers Trust, Cruden and First Nationwide inapplicable in this case. They hold that when a creditor alleges he has been defrauded RICO injury is speculative when contractual or other legal remedies remain which hold out a real possibility that the debt, and therefore the injury, may be eliminated or significantly reduced. The RICO claim is, thus, not ripe until those remedies are exhausted and the damages are clear. In this case, investors allege that the partnerships were fraudulent at the outset because they could never achieve the promised objectives. Accepting that allegation as true, the investors sustained recoverable out-of-pocket losses when they invested; namely, the difference between the value of the security they were promised and the one they received which could not meet those objectives. As investors have no contractual or other legal remedies which could assuage the injury, the amount of damages was "clear and definite," and the injury was ripe, at the time of investment. First Nationwide, 27 F.3d at 768 (citing Bankers Trust ).[1]
 
 
 13
 2. The Question of "New and Independent" Injuries
 
 
 14
 We turn next to the question of whether any actions taken by Merrill Lynch after November 1991 constituted "new and independent" RICO violations under this Court's "separate accrual" rule which begins the RICO limitations period afresh with each new injury. See Bankers Trust, 859 F.2d at 1103. Specifically, investors point to the dissemination of allegedly misleading reports and other communications and the collection of annual fees as constituting the new and independent injuries.
 
 
 15
 We recognize that in some instances a continuing series of fraudulent transactions undertaken within a common scheme can produce multiple injuries which each have separate limitations periods. See Bingham v. Zolt, 66 F.3d 553, 559-61 (2d Cir.1995). In Bingham, however, we were careful to note that the injury had to be new and independent to be actionable. Id. at 560. Further, we found the new injuries in that case to be caused by a variety of schemes which were related only in their ultimate goal. Id. at 561.
 
 
 16
 According to investors' complaint, Merrill Lynch's limited partnership scheme was fraudulent at the outset. Merrill Lynch knew that the investments could not make the "guaranteed" gains, and planned to collect significant fees during the course of the partnership life. Thus, we find that their later communications which put a gloss on the losing investments were continuing efforts to conceal the initial fraud, and not separate and distinct fraudulent acts resulting in new and independent injuries. Similarly, the collection of annual fees occurred in each year of the life of the partnerships. Collection in later years cannot be viewed as a separate and distinct fraud creating new injuries as it was simply a part of the alleged scheme.
 
 3. Inquiry or Actual Notice of the Injury
 
 17
 As noted above, this Circuit has adopted an "injury discovery" rule in RICO cases which holds that "a plaintiff's action accrues against a defendant for a specific injury on the date that plaintiff discovers or should have discovered that injury." Bankers Trust, 859 F.2d at 1103. Thus, even if investors' injury occurred at the time they invested, the limitations period does not begin to run until they have actual or inquiry notice of the injury. Inquiry notice is notice such that a "reasonable investor of ordinary intelligence would have discovered the existence of the fraud." Dodds v. Cigna Securities, Inc., 12 F.3d 346, 350 (2d Cir.1993). The district court held that investors were on inquiry notice before November 1991 because the disclosures in the prospectuses and annual reports should have alerted the investors that they had been misled. In Re Merrill Lynch, at 266. The district court carefully reviewed each specific claim of misrepresentation in the SAC and offered language from the prospectuses and/or annual reports which warns or cautions investors about each particular claim. Id., 268-74.
 
 
 18
 Investors do not dispute that the prospectuses contained cautionary language. Rather, they argue that it is a disputed question of fact as to whether in light of the many alleged misrepresentations the cautionary language put investors on inquiry notice. We have held that the question of inquiry notice need not be left to a finder of fact. See Dodds, 12 F.3d at 350-51 (dismissing plaintiff's claims and holding that she was on inquiry notice of security fraud when she purchased the investments because the risks and illiquidity of the investments were clearly disclosed in the offering materials). Based on the cautionary language in the prospectuses and the annual reports, we find that investors were on inquiry notice of the alleged fraudulent scheme before November 1991 for substantially the same reasons as described by the district court. See In Re Merrill Lynch at 268-74.
 
 
 19
 4. Fraudulent Concealment as a Tolling Exception
 
 
 20
 Investors allege that Merrill Lynch concealed their fraud by actively misrepresenting that the declines in the partnerships' asset values and distributions were the result of short-term declines in the real estate market. This active concealment, they claim, excuses any inquiry notice or at least justifies the delay in bringing the suit. Under the doctrine of fraudulent concealment, the statute of limitations will be tolled if investors prove three elements: (1) wrongful concealment by Merrill Lynch, (2) which prevented investors' discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim. See Butala v. Agashiwala, 916 F.Supp. 314, 319 (S.D.N.Y.1996); see also, Bankers Trust, 859 F.2d at 1105.
 
 
 21
 We find, as did the district court, that investors failed to plead adequately that as a result of Merrill Lynch's alleged concealment they could not, through reasonable diligence, have discovered the fraud. Investors did not allege in the SAC that they exercised due diligence; they make no allegation of any specific inquiries of Merrill Lynch, let alone detail when such inquiries were made, to whom, regarding what, and with what response.
 
 C. The Investors' Other Claims
 
 22
 We hold that the district court did not abuse its discretion when refusing investors' request under Rule 15 for leave to amend their pleadings for the third time. The district court explicitly warned investors that if they chose to file the SAC they would likely not be given another opportunity to amend. Nor did the district court abuse its discretion in dismissing investors' request to convert the motion to dismiss into a motion for summary judgment and to obtain further discovery. Merrill Lynch was entitled to a hearing on its motion to dismiss. We agree that any further document discovery would not have affected the outcome.
 
 
 23
 Finally, the district court properly declined to exercise supplemental jurisdiction over the state law claims after dismissing the RICO action. This Court and the Supreme Court have held that when the federal claims are dismissed the "state claims should be dismissed as well." United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir.1994). Although this is not a mandatory rule, the Supreme Court has stated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine--judicial economy, convenience, fairness and comity--will point toward declining jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).
 
 
 24
 The considerable resources investors spent in mailing a notice to a nationwide class of investors is simply not sufficient to outweigh notions of judicial economy and comity which militate against supplemental jurisdiction when the federal claims have been dismissed pre-trial.
 
 III. CONCLUSION
 
 25
 For the foregoing reasons, the opinion of the district court dismissing the investors' claims with prejudice is affirmed.
 
 
 
 *
 Honorable J. Dickson Phillips, Jr., of the Fourth Circuit Court of Appeals, sitting by designation
 
 
 [1]
 We also are not persuaded by investors' argument that the injury was speculative at the time of purchase because Merrill Lynch had not yet bought all of the real estate properties. All of the properties were purchased by 1990. Thus, the investors' particular claim that Merrill Lynch engaged in fraud when purchasing the properties is also barred by the statute of limitations