**WAL–MART STORES, INC., Plaintiff,**

**v.**

**Barry M. WATSON, et al., Defendants.**

**No. CIV. 99–5187.**

United States District Court,
W.D. Arkansas,
Fayetteville Division.

March 30, 2000.

George R. Rhoads, Mark T. Fryauf, Matthews, Campbell, Rhoads, McClure & Thompson, Rogers, AR, for Wal–Mart Stores, Inc.

G. Alan Wooten, Warner, Smith & Harris, Fort Smith, AR, for Barry Watson, Wildlife Habitat, Int'l and Bristol Ridge, Inc.

W.H. Taylor, Mashburn & Taylor, Fayetteville, AR, for Daralyn R. Watson.

John C. Everett, Jason H. Wales, Everett Law Firm, Fayetteville, AR, for Lawrence L. Pickens & Pickens, Inc.

## *MEMORANDUM OPINION*

H. FRANKLIN WATERS, District Judge.

This case is before the court on the motion to dismiss filed on behalf of Lawrence L. Pickens and Pickens, Inc.[1] Pickens contends the complaint as against him should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Racketeer Influenced and Corrupt Organizations Act (RICO) claim asserted therein is barred by the statute of limitations.

**Background.**

On March 6, 2000, plaintiff, Wal–Mart Stores, Inc., filed its first amended complaint. The complaint asserts civil RICO claims against multiple defendants including Pickens.

The allegations of the complaint concern questionable transactions involving Barry Watson, a former apparel buyer for Wal–Mart, and multiple defendants. The questionable transactions allegedly resulted in Wal–Mart paying an increased price for various types of apparel while Watson, his

---

1. References throughout this opinion to Pickens in the singular should be deemed to include both Pickens and Pickens, Inc.

wife, Daralyn Watson, or companies controlled by them received kickbacks from various vendors.

With respect to Pickens, it is alleged Pickens and various other defendants paid kickbacks to defendant Tuscan Consulting, Inc., in the amount of at least $1,075,150. In paragraph 45, the amended complaint alleges that the kickbacks paid by Pickens on behalf of defendants, Bellagio International, Ltd., and Cliftex Corporation, were made in September, 1994, October, 1994, December, 1994, May, 1995, and July, 1995. The kickbacks paid on these five occasions are alleged to have been at least $63,000.

In consideration of these kickbacks, it is alleged Barry Watson around February 22, 1994, added a line of cotton sweaters purchased from Bellagio International, Ltd., which had not previously been sold in plaintiff's Sam's stores and for which Barry Watson obligated the plaintiff to pay a higher price than the quality of the cotton sweaters justified. The consideration for the kickbacks Pickens paid on behalf of Cliftex Corporation was that Watson around March 10, 1995, switched the plaintiff's purchases of men's sports coats for its Sam's stores from an existing vendor to Cliftex at a higher price than was paid to the existing vendor and for a lesser quality product. It is also alleged that Watson ordered the sports coats and cotton sweaters in a larger quantity than would reasonably sell in the plaintiff's Sam's stores. As a result of the large quantities purchased, plaintiff alleges it was forced to take markdowns on the apparel and thereby lose money.

*Discussion.*

When analyzing a 12(b)(6) motion, we accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Id.* All that is required of a complaint is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a). Furthermore, the complaint is to be liberally construed in the light most favorable to the plaintiff. *See Cole-*man v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). "At a minimum, however, a complaint must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations." *Springdale Education Association v. Springdale School District,* 133 F.3d 649, 651 (8th Cir.1998).

■ We will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Schmedding v. Tnemec Company,* 187 F.3d 862, 864 (8th Cir.1999). "Nor should a complaint be dismissed merely because it does not state with precision all elements that give rise to a legal basis for recovery." *Id.* Therefore, "as a practical matter, a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Id.*

Pickens argues RICO's four year statute of limitations erects an insuperable bar to relief. He contends that in *Rotella v. Wood,* —— U.S. ——, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000), the Supreme Court held that the four year statute of limitations begins to run when a plaintiff knew or should have known of its injury. Given the allegations of the amended complaint concerning the five occasions from September of 1994 until July of 1995 when Pickens, on behalf of Bellagio and Cliftex, is alleged to have paid kickbacks to Watson, Pickens argues the injuries that Wal–Mart allegedly suffered as a result of his actions occurred more than four years prior to the date Wal–Mart filed its original complaint, November 23, 1999.

Pickens argues that if Wal–Mart was injured in its business in the manner alleged in the complaint, the injuries occurred as soon as the plaintiff purchased the sweaters and sports coats from Pickens in February of 1994 and March of 1995. This is true, Pickens contends because Wal–Mart knew what it purchased

from Pickens and could have ascertained immediately upon taking delivery the quality and quantity of the goods purchased.

Wal–Mart states that it was not until after Watson left its employ on December 20, 1995, that an investigation uncovered a series of kickback schemes. While it concedes the purchase of the inferior goods and the payment of kickbacks occurred earlier, it states it did not discover the activities until December of 1995 which is within four years of November 23, 1999.

Further, Wal–Mart argues the *Rotella* case, while it eliminated the injury and pattern discovery rule formerly applied in this circuit, did not adopt an injury occurrence rule.[2] Instead, Wal–Mart states *Rotella* did not settle on a final rule but its holding looked to the date when the injury was discovered. As it did not discover the injury until well within the four year statute of limitations, Wal–Mart contends Pickens' motion to dismiss must be denied.

Although RICO provides for civil actions, it contains no statute of limitations. In *Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Supreme Court, borrowing an analogous four-year period established by the Clayton Act, 15 U.S.C. § 15b, established a four-year limitations period for civil RICO claims. The Supreme Court left for later determination the question of when the limitations period began to run.

In the wake of *Malley–Duff*, the courts adopted a variety of accrual rules. A number of circuits adopted an "injury discovery accrual rule starting the clock when a plaintiff knew or should have known of his injury." *Rotella*, ⸺ U.S. at ⸺, 120 S.Ct. 1075, 1077–78, 145 L.Ed.2d 1047 (citations omitted). Some courts, including the Court of Appeals for the Eighth Circuit, "applied the injury and pattern discovery rule ... under which a civil RICO claim accrues only when the claimant discovers, or should discover, both an injury

and a pattern of RICO activity." *Id. See Granite Falls Bank v. Henrikson*, 924 F.2d 150, 154 (8th Cir.1991). Other courts applied a "last predicate act" rule under which "the period began to run as soon as the plaintiff knew or should have known of the injury and the pattern of racketeering activity, but began to run anew upon each predicate act forming part of the same pattern." *Rotella*, ⸺ U.S. at ⸺, 120 S.Ct. 1075, 1080, 145 L.Ed.2d 1047 (citations omitted).

In *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997), the Supreme Court "cut the possibilities by one, in rejecting the last predicate act rule." *Rotella*, ⸺ U.S. at ⸺, 120 S.Ct. 1075, 1080, 145 L.Ed.2d 1047. *Klehr* left "two candidates favored by the various Courts of Appeals: some form of injury discovery rule (preferred by a majority of Circuits to have considered it), and the injury and pattern discovery rule." *Rotella*, ⸺ U.S. at ⸺, 120 S.Ct. 1075, 1080, 145 L.Ed.2d 1047.

*Rotella* cut the possibilities by one more by rejecting the injury and pattern discovery rule. *Id.* In footnote two of the opinion, the Court was careful to note that it did not "settle upon a final rule." *Rotella*, ⸺ U.S. at ⸺ n. 2, 120 S.Ct. 1075, 1080, 145 L.Ed.2d 1047. It stated that "[i]n addition to the possibilities entertained in the Court of Appeals, JUSTICE SCALIA has espoused an 'injury occurrence' rule, under which discovery would be irrelevant ... and our decision in *Klehr* leaves open the possibility of a straight injury occurrence rule." *Id.* While the Supreme Court was urged in an amicus curiae brief to adopt this latter rule, it declined to pass upon it since the parties had not focused on that option. *Id.*

Wal–Mart is therefore correct when it argues *Rotella* did not definitively adopt an accrual rule for civil RICO actions. *Rotella* did, however, definitively reject the

2. In its brief, Wal–Mart states Pickens is advocating adoption of the injury occurrence rule. However, it is clear from Pickens' brief that

he is advocating adoption of the injury discovery accrual rule.

accrual rule previously adopted by the Eighth Circuit.

We are therefore left with two apparent possibilities: the injury discovery accrual rule and the injury occurrence rule. We begin our analysis with a brief review of plaintiff's RICO claims. In the complaint, Wal–Mart alleges the defendants conspired to violate the provisions of 18 U.S.C. § 1962(a) through (c) in violation of § 1962(d). Wal–Mart seeks treble damages, costs, and attorneys' fees under § 1964(c). 18 U.S.C. § 1964(c).

Section 1962(a) prohibits the use or investment of income derived from a pattern of racketeering activity in any enterprise engaged in interstate commerce. 18 U.S.C. § 1962(a). Section 1962(b) prohibits the acquisition of any enterprise engaged in interstate commerce through a pattern of racketeering activity. 18 U.S.C. § 1962(b). Section 1962(c) prohibits participation in the conduct of an enterprise engaged in interstate commerce through a pattern of racketeering activity. 18 U.S.C. § 1962(c). Section 1962(d) makes it unlawful to conspire to violate §§ 1962(a), (b) or (c). 18 U.S.C. § 1962(d).

"Racketeering activity" is any activity that violates certain enumerated laws, the majority of which are crimes, including certain types of fraud. 18 U.S.C. § 1961(1). In this case, Wal–Mart alleges defendants' racketeering activity consists of the following federal criminal offenses: mail fraud in violation of 18 U.S.C. § 1341; wire fraud in violation of 18 U.S.C. § 1343; money laundering in violation of 18 U.S.C. § 1956; monetary transactions and property derived from unlawful activities in violation of 18 U.S.C. § 1957; and receipt, possession, concealment and disposition of unlawfully converted or taken money that has crossed a state boundary in violation of 18 U.S.C. § 2315.

A "pattern" is established by "at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). These acts are referred to as "predicate acts." *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

In determining the appropriate accrual rule to be applied, we turn to an examination of the Supreme Court's opinions in *Klehr* and *Rotella*. In *Klehr*, the Supreme Court rejected the last predicate act rule for two basic reasons. First, they noted "the last predicate act rule creates a limitations period that is longer than Congress could have contemplated." *Klehr*, 117 S.Ct. at 1989. This was true because a "series of predicate acts (including acts occurring at up to 10–year intervals) can continue indefinitely." *Id*. Second, it noted the "rule is inconsistent with the ordinary Clayton Act rule, applicable in private antitrust treble damage actions, under which 'a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business.' " *Klehr*, 117 S.Ct. at 1990.

With respect to this latter comment, the Supreme Court was careful to note that it was not saying that:

> a pure injury accrual rule always applies without modification in the civil RICO setting in the same way it applies in traditional antitrust cases. For example, civil RICO requires not just a single act, but rather a "pattern" of acts. Furthermore, there is some debate as to whether the running of the limitations period depends on the plaintiff's awareness of certain elements of the cause of action.

*Id*.

It therefore assumed knowledgeable parties and found the Clayton Act analogy helpful. *Id*. It pointed out that "Congress consciously patterned civil RICO after the Clayton Act" and that at the time "civil RICO was enacted, the Clayton Act's accrual rule was well established." *Id*.

Under the Clayton Act, the Supreme Court pointed out that in the case of a continuing violation, like a price fixing conspiracy resulting in unlawfully high priced

sales over a period of years, "each overt act that is part of the violation and that injures the plaintiff, ... starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr*, 117 S.Ct. at 1990 (case citations and internal quotation marks omitted). However, "the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Id.* at 1990–91. The Supreme Court then noted that some of the circuits had applied "discovery" accrual rules the use of which "may reflect the fact that a high percentage of civil RICO cases, unlike typical antitrust cases, involve fraud claims." *Id.* at 1991.

In *Rotella*, the Supreme Court rejected the injury and pattern discovery rule. In so doing, it noted that:

> under the provision recognizing the possibility of finding a pattern of racketeering in predicate acts 10 years apart, even an injury occurrence rule unsoftened by a discovery feature could in theory open the door to proof of predicate acts occurring 10 years before injury and 14 before commencement of litigation. A pattern discovery rule would allow proof of a defendant's acts even more remote from time of trial and, hence, litigation even more at odds with the basic policies of all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recover and a defendant's potential liabilities.

*Rotella*, —— U.S. at ——, 120 S.Ct. 1075, 1078, 145 L.Ed.2d 1047. It found the pattern discovery rule to be an unwarranted extension of the injury discovery rule's rationale. *Id.*

It stated that:

> [f]ederal courts, to be sure, generally apply a discovery accrual rule when a statute is silent on the issue, as civil RICO is here. But in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury,

not discovery of the other elements of a claim, is what starts the clock.

*Id.*

In considering medical malpractice cases, "where the cry for a discovery rule is loudest," the Court noted it had been "emphatic that the justification for a discovery rule did not extend beyond the injury." *Id.* Since "[a] person suffering from inadequate treatment is ... responsible for determining within the limitations period then running whether the inadequacy was malpractice," the Court stated it saw "no good reason for accepting a lesser degree of responsibility on the part of a RICO plaintiff." *Id.*

The Supreme Court recognized that RICO had a unique pattern requirement. In this regard, it stated:

> And it is true as well that a pattern of predicate acts may well be complex, concealed, or fraudulent. But identifying professional negligence may also be a matter of real complexity, and its discovery is not required before the statute starts running.... The fact, then, that a considerable effort may be required before a RICO plaintiff can tell whether a pattern of racketeering is demonstrable does not place him in a significantly different position from the malpractice victim. A RICO plaintiff's ability to investigate the cause of his injuries is no more impaired by his ignorance of the underlying RICO pattern than a malpractice plaintiff is thwarted by ignorance of the details of treatment decisions or of prevailing standards of medical practice.

*Rotella*, —— U.S. at ——, 120 S.Ct. 1075, 1081, 145 L.Ed.2d 1047.

Returning to its Clayton Act analogy, the Supreme Court stated:

> What is equally bad is that a less demanding basic discovery rule than federal law generally applies would clash with the limitations imposed on Clayton Act suits. This is important because, as we have previously noted, there is a clear

legislative record of congressional reliance on the Clayton Act when RICO was under consideration ... and we have recognized before that the Clayton Act's injury focused accrual rule was well established by the time civil RICO was enacted. In rejecting a significantly different focus under RICO, therefore, we are honoring an analogy that Congress itself accepted and relied upon, and one that promotes the objectives of civil RICO as readily as it furthers the objects of the Clayton Act. Both statutes share a common congressional objective of encouraging civil litigation to supplement Government efforts to deter and penalize the respectively prohibited practices. The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, "private attorneys general," dedicated to eliminating racketeering activity. The provision for treble damages is accordingly justified by the expected benefit of suppressing racketeering activity, an object pursued the sooner the better. It would, accordingly, be strange to provide an unusually long basic limitations period that could only have the effect of postponing whatever public benefit civil RICO might realize. The Clayton Act avoids any such policy conflict by its accrual rule that "generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business," and the Clayton Act analogy reflects the clear intent of Congress to reject a potentially longer basic rule under RICO.

In sum, any accrual rule softened by a pattern discovery feature would undercut every single policy we have mentioned. By tying the start of the limitations period to a plaintiff's reasonable discovery of a pattern rather than to the point of injury or its reasonable discovery, the rule would extend the potential limitations period for most civil RICO cases well beyond the time when a plaintiff's cause of action is complete, as this case shows.... The fact, as Rotella notes, that difficulty in identifying a pat-

tern is inherent in civil RICO, only reinforces our reluctance to parlay the necessary complexity of RICO into worse trouble in applying its limitations rule. A pattern discovery rule would patently disserve the congressional objective of a civil enforcement scheme parallel to the Clayton Act regime, aimed at rewarding the swift who undertake litigation in the public good.

*Rotella,* —— U.S. at ——, 120 S.Ct. 1075, 1083, 145 L.Ed.2d 1047.

In *Granite Falls Bank v. Henrikson,* 924 F.2d 150 (8th Cir.1991), the Eighth Circuit first adopted the now rejected injury and pattern discovery accrual rule. While we may no longer apply the accrual rule adopted in that case, we nevertheless may glean some guidance from the points considered by the Eighth Circuit in adopting that rule.

First, although it conceded the analogy drawn by the Supreme Court in *Malley–Duff* "between the Clayton Act and the civil RICO statute provides a strong argument for adopting the antitrust accrual rule," the Eighth Circuit noted that "the unique character of a private RICO cause of action requires a specifically tailored rule to determine when its limitations period begins to run." *Granite Falls,* 924 F.2d at 152. Second, the Eighth Circuit stressed the fact that the:

primary source of RICO's unique character is its pattern requirement.... This multi-act, pattern requirement distinguishes a RICO action from an antitrust violation. No pattern requirement is contained in the Clayton Act and accrual does not depend on the occurrence of an act or acts subsequent to the initial wrongful act.

*Id.* at 153.

Third, the Eighth Circuit pointed out there was a distinct difference in the nature of the harms sought to be prevented by the Clayton Act and RICO. Specifically, it noted the Clayton Act was designed to target harms to competition induced by

force rather than fraud while racketeering injuries included harms from fraud and harms resulting from force. *Id.* (citations omitted). "In fraud-based actions, it is well-settled under federal law that the statute of limitations starts running when the plaintiff discovers (or reasonably should have discovered) the underlying facts relevant to his claim." *Id.* (citations omitted).

Given the distinguishing features of RICO, the Eighth Circuit stated it was "inclined to think that the nature of the conduct proscribed by RICO compels the application of discovery principles in fashioning an accrual rule." *Id.* It concluded the "antitrust accrual rule, which without regard to the plaintiff's knowledge or lack of knowledge begins the limitations period at the commission of the last injurious act, is an inappropriate rule for application to the civil RICO statute of limitations." *Id.*

The Eighth Circuit also considered and rejected the injury-based accrual rule that had been adopted by a number of the Courts of Appeals for different circuits. It stated the focus of this rule was inappropriately on "the injury sustained by a predicate act rather than upon the RICO injury, thus making it possible for the limitations period to have lapsed before the plaintiff can state a RICO cause of action." *Id.* at 154.

■ Guided by the reasoning of these case and in the absence of a definitive decision from the Supreme Court, we believe the appropriate accrual rule is the injury discovery rule. As the Ninth Circuit has noted, this "rule was imported from the general federal rule of accrual." *Grimmett v. Brown,* 75 F.3d 506, 510 (9th Cir.1996). The rule has two components.

First, the civil RICO limitations period "begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." The plaintiff need not discover that the injury is part of a "pattern of racketeering" for the period to begin to run. The second part of the "injury discovery" rule is the "separate accrual rule," which provides that a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before.

*Id.* (citations omitted).

In reaffirming its adherence to the injury discovery rule, the Ninth Circuit noted: (1) the focus of RICO is on the predicate acts;[3] (2) the courts have held in a number of different contexts that a given statute of limitations begins to run before plaintiff discovers all the elements of his claim;[4] (3) "a court wishing to give a plaintiff who knows of her injury time to investigate the pattern can always toll the limitations period;" and (4) the " 'injury discovery' rule encourages diligence in RICO prosecutions and insures that evidence remains fresh." *Id.* at 511–12 (citations omitted). Other courts have also noted that any undue harshness of the injury discovery accrual rule can be ameliorated by application of equitable principles. *See e.g., McCool v. Strata Oil Co.,* 972 F.2d 1452, 1465 (7th Cir.1992).

■ Under the injury discovery accrual rule, Wal–Mart's civil RICO cause of action accrues when Wal–Mart discovers or should have discovered its injury. Accepting the allegations of the complaint as true and construing them in the light most favorable to Wal–Mart as we must, we cannot say it appears beyond doubt that Wal–Mart can prove no set of facts in support of its claim that would entitle it to relief. *See e.g., In re Merrill Lynch Ltd. Partnerships Litigation,* 154 F.3d 56, 59 (2d Cir.1998)(Investors alleged real estate lim-

---

**3.** In *Sedima,* the Supreme Court made it clear that RICO injuries flow from the individual predicate acts, not from the pattern itself. *Sedima,* 473 U.S. at 495–97, 105 S.Ct. at 3284–85.

**4.** As mentioned above, the Supreme Court in *Rotella* reiterated that a plaintiff need not have knowledge of facts supporting all elements of a claim before the claim accrues. *Rotella,* —— U.S. at ——, 120 S.Ct. 1075, 1081, 145 L.Ed.2d 1047.

ited partnerships were fraudulent at the outset because they could never achieve the promised objectives. Accepting the allegation as true, the investors sustained recoverable out-of-pocket losses when they invested.)

While it is true that the purchase orders for the cotton sweaters and the men's sport coats were placed in February of 1994 and March of 1995, more than four years prior to the filing of the original complaint, Wal–Mart has alleged that it was unaware of the questionable nature of these contracts until after Watson left its employ in December of 1995. Certainly the court cannot tell from the face of the complaint whether Wal–Mart, a multi-state/multi-national company, had, or should have had, some type of accounting or review system in place that should have caused it to "discover" the inferior quality of the apparel and/or the excessive quantity of apparel being purchased.

In the complaint, Wal–Mart states it seeks to recover for losses due to mark-downs, etc., it suffered as a result of the excessive quantities of high cost, low quality merchandise, purchased by Watson, for the plaintiff, from the various defendants. In other words, the injury sought to be redressed is the monetary loss it suffered because of the quality and quantity of these goods. The court, therefore, does not believe Wal–Mart suffered any new or independent injury when Watson left its employ and its investigation revealed the kickback scheme. Nevertheless, we cannot say the allegations of the complaint establish that Wal–Mart discovered, or should have discovered, its injury more than four years prior to the filing of this case. Constrained as we are by the standard of review applicable to Rule 12(b)(6) motions, we have no choice but to deny Pickens' motion. Pickens may, of course, raise this issue again on a properly supported summary judgment motion.

*Conclusion.*

For the reasons stated, the motion to dismiss filed by Lawrence Pickens and Pickens, Inc., will be denied by a separate order entered concurrently herewith.

### *ORDER*

On this 30th day of March, 2000, upon consideration of the motion to dismiss filed by Lawrence L. Pickens and Pickens, Inc., the court finds for the reasons stated in a memorandum opinion of even date that said motion should be and hereby is denied.

IT IS SO ORDERED.