20-4114
*Simmons, et al. v. Reich, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of October, two thousand twenty-one.

PRESENT:
> RICHARD C. WESLEY
> RICHARD J. SULLIVAN,
> > *Circuit Judges*,
> BRIAN M. COGAN,[*]
> > *District Judge.*

_____

DAVIE SIMMONS, DWIGHT REDLEY, DERRICK AMOS, LATANYA PIERCE, 559 ST. JOHN'S PL. LLC, KARL TERRY,

> *Plaintiffs-Appellants*,

_____

[*] Judge Brian M. Cogan, of the United States District Court for the Eastern District of New York, sitting by designation.

v.                                              No. 20-4114

ALEXANDER REICH, NECHADIM CORP., TEVES
REALTY INC., HAROLD SCHWARTZ, SEARLE
SELMON, SOLOMON ROSENGARTEN, ALAN J.
WOHLBERG, YELADIM LLC,

                    *Defendants-Appellees.*
_____

**For Appellants:**                    Chidi A. Eze, Esq., Brooklyn, NY.


**For Appellees:**                     Joseph J. Haspel, Joseph J. Haspel,
                                       PLLC, Middletown, NY; Solomon
                                       Rosengarten, Esq., Brooklyn NY (*for*
                                       Solomon Rosengarten); Erin Anne
                                       O'Leary, Lewis Brisbois Bisgaard &
                                       Smith LLP, New York, NY (*for* Alan J.
                                       Wohlberg).



Appeal from the United States District Court for the Eastern District of New

York (Eric R. Komitee, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that that the district court's judgment is

**AFFIRMED**.

Plaintiffs-Appellants, a group of black homeowners, appeal a judgment of

the district court (Komitee, *J.*) dismissing their claims against various mortgage

lenders (the "Lenders") for alleged violations of §§ 1962(c) and 1962(d) of the

2

Racketeer Influenced and Corrupt Organizations (RICO) Act, and for discrimination in violation of 42 U.S.C. §§ 1981, 1983, and 1985, the United States Constitution, the New York State Constitution, and New York common law.[1] Plaintiffs allege that the Lenders engaged in a long-running, predatory mortgage loan scheme in which the Lenders charged usurious interest rates, concealed the amount of interest charged, demanded exorbitant fees, and brought wrongful foreclosure proceedings against Plaintiffs when they defaulted on their loans. Plaintiffs also contend that the Lenders targeted them for these predatory loans based on their race. On November 20, 2020, the district court dismissed all claims, finding that the RICO claims were time-barred and that Plaintiffs had failed to plausibly allege that the Lenders had discriminated against them because of their race.

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

I.     **Standard of Review**

"We review de novo a district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable

---

[1] The district court declined to exercise supplemental jurisdiction over Plaintiffs' state-law claims, Sp. App'x at 41–42, and Plaintiffs do not appeal the dismissal of these claims.

3

inferences in favor of the plaintiffs." *Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012). A defendant may raise the affirmative defense that a claim is time-barred in a motion to dismiss if that defense is apparent from the face of the complaint. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). When that is the case, the plaintiff has the burden to plead the elements of exceptions to the statute of limitations to meet the plausibility standard. *See, e.g.*, *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320–21 (2d Cir. 2021); *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015). Equitable tolling is one such exception. Where dismissal of a claim is based on the district court's application of a statute of limitations, we review the decision de novo, *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011), but we review the district court's decision to deny equitable tolling for abuse of discretion, *Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 81 (2d Cir. 2003).

## II.    RICO Claims

Plaintiffs argue that the district court erred in concluding that the statute of limitations for their RICO claims began to run when the Plaintiffs closed on their loan agreements, which took place – at the latest – in 2010.[2] Plaintiffs

---

[2] Plaintiffs filed their complaint in the Eastern District of New York on June 4, 2019. App'x at 6.

4

further argue that, even if their RICO injuries did accrue upon closing, (1) the statute of limitations should be tolled due to the Lenders' fraudulent concealment of the scheme, and (2) they suffered new and independent RICO injuries within the statute of limitations period. We disagree.

RICO claims are subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 552 (2000). "In a RICO case, the first step in the statute of limitations analysis is to determine when the plaintiff sustained the alleged injury for which the plaintiff seeks redress." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 150 (2d Cir. 2012). The second step is to determine when the plaintiff "discovered or should have discovered the injury." *Id.* (quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998)). "As a general matter, 'the limitations period does not begin to run until [a plaintiff] ha[s] actual or inquiry notice of the injury.'" *Id.* (quoting *Merrill Lynch P'ships*, 154 F.3d at 60).

Here, Plaintiffs allege that the Lenders fraudulently misled them into taking out loans with illegally high interest rates and improper fees. Plaintiffs thus sustained their alleged injuries when they assumed these loan obligations. Moreover, the district court correctly concluded that Plaintiffs were on inquiry notice of these injuries at the time of the closing. We have held that "storm

5

warnings" give rise to a duty of inquiry, in both RICO and securities cases, "when the circumstances would suggest to [a person] of ordinary intelligence the probability that she has been defrauded." *Id.* at 151 (quoting *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 168 (2d Cir. 2005)). "[O]nce there are sufficient 'storm warnings' to trigger the duty to inquire, and the duty arises, if a plaintiff does not inquire within the limitations period, the claim will be time-barred." *Id.* at 153.

Plaintiffs do not dispute that they sustained their injuries at the time of the closing; rather, they contend that the district court erred in concluding that they were on notice of the injuries at that time. Specifically, Plaintiffs argue that they were misled into signing the illegal loan agreements, and never received mortgage statements or account balance statements reflecting the principal owed, so they were unaware of the Lenders' predatory scheme at the time of closing. But Plaintiffs' allegations show the presence of "storm warnings" that would have suggested fraud to a reasonably intelligent person. For example, Plaintiffs acknowledge that, at the time of closing, they were forced to pay improper, "under-the table cash incentive[s]" to the Lenders, typically amounting to 10% of the loan principal. App'x at 16, 18, 21–22, 25–29. Plaintiffs also concede that, at

6

closing, they signed an unexpected rider agreeing to make an entity called Advent Funding their mortgage broker, even though they had not interacted with a broker and had never heard of Advent Funding before. *Id.* at 16, 18, 22, 26, 28, 31, 40. Further, Plaintiffs admit that the Lenders failed to deliver the full amount of the loan principal specified in their agreements, and Plaintiffs thus "le[ft] the closing table with 60–65% of the loan amount on paper." *Id.* at 22, 25, 42. Whether or not Plaintiffs received subsequent balance statements showing that the principal owed was increasing, they were clearly on notice that something was off when they entered into the loan transactions.[3] Moreover, the terms of the loans – including the high monthly payments, short loan durations, and high default interest rates – were laid out in the agreements at the time of closing. Plaintiffs' failure to fully read and understand the agreements before signing does not absolve them from a duty to inquire. *See Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) ("[I]n the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract .

---

[3] Plaintiffs' heavy reliance on an out-of-circuit district court case, *Weiss v. Bank of Am. Corp.*, 153 F. Supp. 3d 831 (W.D. Pa. 2015), does not persuade us otherwise. (Plaintiffs' Br. at 17–19.) In *Weiss*, the district court determined that the plaintiffs plausibly alleged "that they exercised reasonable diligence but were unable to find the storm." 153 F. Supp. 3d at 842. Here, in contrast, Plaintiffs have failed to allege reasonable diligence after they were put on notice of facts suggesting fraud.

. . is conclusively presumed to know its contents and to assent to them[.] Thus, even if [the plaintiff] did not understand the form[,] . . . the burden was upon him to have his concerns addressed before signing [the form.]" (internal citations and quotations omitted)). The district court thus correctly determined that Plaintiffs' duty to inquire arose at the time of the loan closings (from 2003 to 2010), and that their claims are therefore time-barred.

Plaintiffs alternatively argue that, even if the statute of limitations began to run at the time of the closing, the limitations period should be tolled based on the Lenders' fraudulent concealment of their predatory loan scheme.[4] Where there is a duty to inquire, however, Plaintiffs "may not rely on allegations of fraudulent concealment to avoid the limitations bar unless they exercised due diligence in attempting to ascertain the facts related to the alleged fraud, but were nevertheless unable or prevented from discovering the nature of their claim." *Griffin v. McNiff*, 744 F. Supp. 1237, 1256 (S.D.N.Y. 1990), *aff'd*, 996 F.2d 303 (2d Cir. 1993); *Koch*, 699 F.3d at 157 ("Reasonable diligence is a prerequisite to the applicability of equitable

---

[4] "Under federal common law, a statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch*, 699 F.3d at 157 (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999)).

tolling."). Here, as discussed, Plaintiffs' allegations reveal that they had notice of the fraud at the time of closing, yet they made no inquiries or investigations to obtain the information they allege was withheld. Plaintiffs have therefore failed to adequately plead tolling based on fraudulent concealment. *See Merrill Lynch P'ships*, 154 F.3d at 60 (concluding that the plaintiffs failed to allege they exercised due diligence where "they ma[d]e no allegation of any specific inquiries of Merrill Lynch, let alone detail when such inquiries were made, to whom, regarding what, and with what response").

Plaintiffs additionally argue that at least some of them suffered new and independent injuries that restarted the limitations period. To be sure, this Court has recognized a "separate accrual rule," under which "a new claim accrues and the limitation period begins anew each time a plaintiff discovers or should have discovered a new and independent injury." *Id.* at 59 (citing *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988)). But while Plaintiffs argue that they suffered "new and independent" injuries within the limitations period in the form of foreclosure proceedings, threats of eviction, and the continuing obligation to make "exorbitant payments," Plaintiffs' Br. at 24–25, these events are clearly derivative of the allegedly fraudulent mortgage agreements. *See Merrill Lynch*

9

*P'ships*, 154 F.3d at 59–60 (concluding that, where the alleged scheme was "fraudulent at the outset," the defendants' later efforts to conceal the initial fraud or collect more money were "simply a part of the alleged scheme" and "cannot be viewed as a separate and distinct fraud creating new injuries"); *see also Rosenshein v. Meshel*, 688 F. App'x 60, 63 (2d Cir. 2017) ("The multiple foreclosures . . . did not constitute new and independent injuries; rather, they were merely symptoms of [the plaintiff's] pre-existing injuries"); *Madison 92nd St. Assocs., LLC v. Courtyard Mgmt. Corp.*, 624 F. App'x 23, 27 (2d Cir. 2015) (holding that the foreclosure and subsequent sale of hotel were not "new and independent" injuries, but rather "direct consequences" of the hotel's unionization and resultant high labor costs, which was the plaintiff's primary RICO injury).

For all these reasons, we agree with the district court that Plaintiffs' RICO claims are time-barred.

## III.   Civil Rights Claims

Plaintiffs also challenge the district court's dismissal of their claims for civil rights violations under 42 U.S.C. §§ 1981, 1983, and 1985, the United States Constitution, the New York State Constitution, and New York common law. Each of these claims is predicated on the same alleged harm:   that the Lenders

targeted black borrowers for their predatory loans, subjecting them to higher interest rates and more stringent loan conditions than borrowers of other races. App'x at 33, 61–62. But other than the conclusory allegation that the Lenders "s[ought] out, targeted[,] and continue to target African-Americans to subject to discriminatory and disparate treatment," App'x at 33, Plaintiffs' complaint is devoid of any *facts* that would support a plausible inference of discrimination. Indeed, while Plaintiffs insist that the Lenders "charged African-American[s] annual interest rate[s] of 14% to 24%, while charging similarly situated individuals of different races and color 10-12% annual interest rate," *id.*, they offer no facts to support that assertion. We are not bound to accept the legal conclusion that Plaintiffs are "similarly situated in all material respects to the individuals with whom [they] seek to compare [themselves.]" *Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir. 2019); *see also Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) ("It is well established that mere conclusory allegations are insufficient to establish a cause of action for a violation of civil rights." (internal quotation marks omitted)).

Because Plaintiffs have failed to allege that the Lenders unlawfully targeted them for more stringent loan conditions based on their race, we conclude that they

have failed to state a claim for their civil rights claims, and the district court appropriately dismissed these claims.

## IV.   Conclusion

We have considered Plaintiffs' remaining arguments and find them to be meritless.   Accordingly, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court